ORIGINAL

FILED
NOV 2 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**NORTH STAR ALASKA HOUSING CORPORATION,**

**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant.**

No. 07-770 C

# COMPLAINT

Plaintiff North Star Alaska Housing Corporation alleges:

## INTRODUCTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491, *et seq.* and 41 U.S.C. § 601, *et seq.*

## THE PARTIES

2. The plaintiff is North Star Alaska Housing Corporation ("North Star"), an Alaska corporation with its principal offices at 937 Harvard Avenue East, Seattle, Washington 98102.

3. The defendant is the United States of America, acting through officials representing the Secretary of the Army and the Chief of the Army Corps of Engineers (the "Government").

## NATURE OF THE ACTION

4. This is an action for breach of contract arising out of the Lease agreement between North Star and the Government for the 400-unit Army housing complex on Fort

Wainwright, Alaska known as Birchwood Homes or Birchwood Property (the "Lease") which was entered into by virtue of the authority of 10 U.S.C. § 2828, as amended by Section 801 of Public Law 98-115 ("Section 801"). Section 801 introduced privatization into the military housing market, and represents an effort by Congress to ensure that soldiers and their families receive quality, safe, affordable, and convenient housing options that had been lacking when military housing was exclusively Government-run.

5. As set forth below, and as found by this Court in its Opinion dated April 2, 2007, in *North Star Alaska Housing Corporation v. The United States*, Nos. 98-168C, 02-1632C and 03-2699C (the "Opinion"), the Government has breached its Lease with North Star and has acted in bad faith in administering the Lease.

6. Prerequisite jurisdictional matters with respect to the filing of this Complaint and with respect to the claims asserted in this Complaint have been met. By letter dated August 23, 2007, North Star submitted to the Contracting Officer a certified claim in the sum certain amount of $1,887,822.04, and requested a final decision within 60 days. (A copy of this claim letter, without attachments, is Exhibit A, hereto.) North Star's claim consists of the following seven (7) major claim areas and is based in large part on the declaratory rulings set forth in the Opinion: Rent Abatements; Unpaid Occupant Damages; Incentive Fees; Depreciation; Cost Book Approval; Additional Payroll; and Outstanding Overhead and Margin.

7. The Government has failed to issue a final decision on all portions of North Star's claim within 60 days of its receipt of the claim. By letter dated October 25, 2007, (attached hereto as Exhibit B) the Contracting Officer issued a final decision ("COD") on North Star's claims relating to Rent Abatements (years 2002, 2003 and 2005), and on the following portions

of North Star's claims relating to Unpaid Occupant Damage: Matching Carpet Unit 884; Carpet and Vinyl Unit 883; Gutter Downspout Unit 638; Carpet and Counter Unit 961; Repainting Bathroom Unit 961; Water Damage Units 1006,1229 and 952; and Floor Matching Unit 623. The Contracting Officer awarded North Star a sum total of $62,474.35 for the claims addressed in the COD and further found that North Star should receive interest on the principle amount awarded from the date of the receipt of North Star's COD request (August 27, 2007) until paid. North Star has invoiced the Government for this amount.

8. In the October 25, 2007, partial final decision, the Contracting Officer stated that a final decision on that portion of North Star's claims relating to Incentive Fees would be issued on November 30, 2007. The Contracting Officer has indicated that a final decision on all remaining portions of North Star's claims (which include additional Unpaid Occupant Damage, Depreciation, Cost Book Approval, Additional Payroll, and Outstanding Overhead and Margin) will be issued by February 27, 2008, or approximately 180 days after the Contracting Officer's receipt of the claim. (See letter dated October 19, 2007, attached hereto as Exhibit C).

9. North Star believes that due to the extensive history surrounding the issues that form the basis of its claims, and the extensive discovery conducted by the Government in Case Nos. 98-168C, 02-1632C and 03-2699C, the Government has had ample time to investigate all portions of its August 23, 2007, claim and that the time periods the government has set to issue additional final decisions are not reasonable. North Star, therefore, requests that the Court consider those portions of North Star's claims that have not yet been addressed by the Contracting Officer to be "deemed denied" for jurisdictional purposes.

## FACTUAL ALLEGATIONS

### I. Unpaid Occupant Damage

10. Contrary to the terms of the Lease, the Government instituted a practice of failing to correct occupant damage so that it would be viewed, upon the next tenant change over, as normal wear and tear. The Government also wrongfully required the matching of items that were adjacent to replaced items.

11. In the Opinion, this Court found that these and other practices constituted a breach of the Lease and the covenant of good faith and fair dealing. Opinion 63-64, 69-70, 85.

12. North Star has incurred additional costs as a direct result of these Government actions which required North Star to match surfaces adjacent to occupant damage replacements, repair occupant damaged walls, replace occupant damaged stoves and refrigerators and replace occupant damaged carpet. North Star is entitled to recover these additional costs from the Government.

### II. Incentive Fees

13. Article VII of the Lease provides that the Government may pay North Star an "incentive fee" of up to five percent of the maintenance rent for the period of time for which North Star's performance is found by the Government to substantially exceed the established standards of the Lease.

14. In the Opinion, this Court found that the "incentive fee decisions made for 1995 and years subsequent in suit must be set aside as arbitrary and capricious." Opinion 66. The Court further found that it had monetary jurisdiction over the incentive fee awards for the years 1997 through 2001. On June 21, 2007, the Government reported to the Court in Case No. 98-

168C that it had awarded North Star incentive fees for the contract years 1997-2001 in the total amount of $258,535.

15. North Star is also entitled to recover its full incentive fee awards for the years 1995, 1996, and 2002-2006, as the Government has provided no legitimate reasons for denying any of the Incentive Fee awards for those years.

## III. Depreciation

16. During the term of the Lease the Government began implementing a 10-year depreciation schedule with regard to carpet damage, countertops, vinyl and other types of materials installed in the units.

17. In the Opinion, this Court found that the Government's imposition of a depreciation schedule was contrary for the terms of the Lease and the parties' prior course of dealing, violated the covenant of good faith and fair dealing and constituted bad faith. Opinion 60-63, 85.

18. North Star is entitled to recover the amount of the Government's improper withholding of depreciation.

## IV. Cost Book Approval

19. The Lease required that the parties establish a list of repair costs ("Cost Book") that "will be subject to change annually or from time to time by the mutual agreement of [North Star] and the [Army,]" and required North Star, in work authorizations, to be reimbursed at the rates established by the list. Opinion 63.

20. During the term of the Lease, the Government began unilaterally altering the

process for preparing work authorizations and improperly removed items from the approved list of repair costs.

21. In the Opinion, this Court found that these Government actions were contrary to the Lease and the parties' prior course of dealing and constituted a breach of the covenant of good faith and fair dealing. Opinion 63-64.

22. As a direct result of the Government's failure to properly approve the Cost Book, North Star has suffered damages for which it is entitled to reimbursement from the Government.

## V. Additional Payroll

23. During the term of the Lease, the Government began increasing North Star's downtime by improperly stockpiling units for same day release, failing to provide adequate notice of inspections, failing to provide work authorizations, failing to provide additional time for extensive repair work and by the improper use of extra-contractual inspections.

24. In the Opinion, the Court found that North Star was entitled to a declaration "regarding the correctness of its interpretations of the Lease, and the requirements of the covenant of good faith and fair dealing, with respect to the enumerated actions that increased downtime and otherwise increased North Star's costs." Opinion 85. See also Opinion 51-57 and Fact Appendix II.

25. North Star has incurred additional payroll costs due to the additional accounting and scheduling burdens caused by the various Government breaches and it is entitled to recover these costs from the Government.

**VI. Outstanding Overhead and Margin**

26. The Lease entitles North Star to reasonable overhead for man-hour costs expended to repair damage to property above normal wear and tear. During the years 1998-2005, however, the Government began a practice of improperly excluding overhead.

27. In the Opinion, the Court found that North Star was entitled to a declaration regarding "the correctness of its interpretations of the Lease, and the requirements of the covenant of good faith and fair dealing, with respect to the enumerated actions that increased downtime and otherwise increased North Star's costs." Opinion 85.

28. North Star is entitled to recover the overhead and margin that was improperly withheld from it during the years 1998-2005.

**COUNT 1**

**BREACH OF CONTRACT**

29. Paragraphs 1 through 28 above are incorporated by reference as if fully set forth herein.

30. The Government has continued to breach its Lease with North Star, as set forth above and as found in the Opinion.

31. As a direct and proximate result of the Government's breaches, North Star has suffered damages in an amount of $1,802,179.67.

## COUNT II

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

32. Paragraphs 1 through 28 above are incorporated by reference as if fully set forth herein.

33. The Lease and other contract documents carry with them the obligation of the parties to conduct their affairs in good faith and to deal fairly with each other.

34. The Government's conduct under the Lease, set forth above and as found in the Opinion, is in direct violation of its duty of good faith and fair dealing.

35. As a direct and proximate result of the Government's conduct, North Star has suffered damages in an amount of $1,802,179.67.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully demands judgment against defendant as follows:

(A) Damages in an amount of $1,802,179.67;

(B) Appropriate interest, attorneys' fees, and costs; and

(C) Such other and further relief as the Court deems just and proper.

Dated: November 2, 2007

Respectfully submitted,

PAUL W. KILLIAN

Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Counsel for Plaintiff

**CERTIFICATE OF FILING**

I hereby certify that a true and correct copy of the foregoing Complaint was served by first-class U.S. mail, postage pre-paid, this 2nd day of November 2007, on:

Timothy P. McImail
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th floor
1100 L Street, NW
Washington, DC 20530

Attorney for Defendant

Paul W. Killian

# Exhibit A

1066 7th Infantry Division Loop
Fairbanks, Alaska 99703
Telephone 907 • 356 • 1616
Facsimile 907 • 356 • 1575
Email nsah@polarnet.com

937 Harvard Avenue East
Seattle, Washington 98102
Telephone 206 • 328 • 2000
Facsimile 206 • 328 • 4000
Email fischerprop@seanet.com

August 23, 2007

VIA OVERNIGHT MAIL

Ms. Veronica Hiriams
Contracting Officer
Department of the Army
U.S. Army Engineers District, Alaska
P.O. Box 6898
Anchorage, AK 99506-0898

Re: Contract Disputes Act Claim; Request for a Contracting Officer's Final Decision

Dear Ms. Hiriams:

Pursuant to Lease No. DACA: 85-5-88-17, entered into between North Star Alaska Housing Corporation ("North Star") and the United States of America ("Government") on November 6, 1987, North Star hereby submits this Contract Disputes Act ("CDA") certified claim in the sum certain amount of $1,887,822.04. As is more fully described below, this claim is based in large part on the declaratory rulings set forth in the April 2, 2007, decision of the United States Court of Federal Claims ("Court") in *North Star Alaska Housing Corporation v. The Untied States,* Nos. 98-168C, 02-1632C and 03-2699C (herein "the Decision" ). A signed certification and relevant supporting data are attached hereto.

North Star respectfully requests $1,887,822.04 on its claims, along with CDA interest from the date of this submission. A Final Decision on this claim is hereby requested within sixty (60) days from your receipt of this letter.

## CLAIM SUMMARY

The total claim amount of $1,887,822.04 consists of the following seven (7) major claim areas, each of which is discussed in more detail in the body of this letter. With regard to rent deductions, the damages claimed are the actual amount of monthly rent improperly withheld by the Government and not awarded in the Decision or claimed in the '04 and '05 cases before the Court. With regard to incentive fees, the damages claimed are the amounts that have not been awarded to North Star. For certain individual claim elements, reasonable estimates of the damages have been prepared based on North Star's recorded expenditures and/or the estimates of North Star personnel. The summary of claim is as follows:

North Star
Alaska
Housing Corporation

A
Fischer
Properties
Company

| Claim ID | Claim | Total Claim |
|---|---|---|
| A | Rent Abatements | $59,394,37 |
| B | Unpaid Occupant Damages | $409,965.07 |
| C | Incentive Fees | $338,056.45 |
| D | Depreciation | $578,112.00 |
| E | Cost Book Approval | $ 17,359.09 |
| F | Additional Payroll | $458,078.06 |
| G | Outstanding Overhead and Margin from 1998-2005 | $ 26,917.00 |
| Total | | 1,887,822.04 |

**A. RENT ABATEMENTS**

As found by the Court on page 64 of the Decision, beginning in 2002, the Government invoked Sections H.1.(c) and H.1.(d) of the maintenance annex to improperly assess liquidated damages against North Star. The Court also found at page 85 of the Decision that North Star was "entitled to recover the costs associated with rent abatements (liquidated damages)." The improper rent abatements which form the basis of this claim total $59,394.37 and are listed in Tab A, hereto.

**B. UNPAID OCCUPANT DAMAGE**

As discussed in the Decision at page 63, the Government instituted a practice of failing to correct occupant damage so that it would be viewed, upon the next tenant change over, as normal wear and tear. The Government also required the matching of items which were adjacent to replaced items, such as carpeting and countertops. The Court found these and related Government practices to be improper. See Decision, pages 63, 69-71 and 85, and Fact Appendix 1 and 2. This portion of North Star's claim relates to these improper Government actions and consists of 12 items, described in more detail in Tab C, hereto. The total amount of this claim relating to general occupant damage is $409,965.07.

**C. INCENTIVE FEE**

Article VII of the Lease provides that the Government may pay North Star an "incentive fee" of up to five percent of the maintenance rent for the period of time for which North Star's performance is found by the Government to substantially exceed the established standards of the Lease. The Court found on page 66 of the Decision that the "incentive fee decisions made for 1995 and years subsequent in suit must be set aside as arbitrary and capricious."

Because the Court had monetary jurisdiction over the incentive fee awards for the years 1997 through 2001, this claim addresses the years 1995, 1996, 2002- 2006. See Tab C, hereto. The total amount of the claim for unawarded incentive fees is $338,056.45.

**D. DEPRECIATION**

The Court, on pages 60-63 of the Decision, found that the Government's imposition of a depreciation schedule with respect to carpet damage, countertops, vinyl and other items was contrary to the Lease and applicable case law, violated the covenant of good faith and fair dealing and constituted bad faith. See also page 85 of the Decision where the Court found that North Star was entitled to a declaration regarding "the depreciation of carpeting and other items." In accordance with these findings, North Star submits this claim for the Government's improper withholding of depreciation in the amount of $578,112. Additional detail concerning the calculation of these damages is set forth in Tab D.

**E. COST BOOK APPROVAL**

The Court, on pages 63-64 of the Decision, found that the Government unilaterally altered the process for preparing work authorizations and improperly removed items from the List of Repair Costs. As a result of these actions and the Government's failure to properly approve the Cost Book, North Star was damaged. The total amount of this claim, as is more fully detailed in Tab E, hereto, is $17,359.09.

**F. ADDITIONAL PAYROLL**

The Court, on page 85 of the Decision, found that North Star was entitled to a declaration regarding "the correctness of its interpretations of the Lease, and the requirements of the covenant of good faith and fair dealing, with respect to the enumerated items that increased downtime and otherwise increased North Star's costs." As found by the Court on pages 51-57 of the Decision, the items that increased downtime included, but were not limited to, stockpiling of

Ms. Veronica Hiriams
August 23, 2007
Page 4

units for same day release, failure to provided adequate notice of inspections, failure to provide work authorizations, failure to provide additional time for extensive repair work and improper use of extra-contractual inspections. See also Decision, Fact Appendix 2. North Star incurred additional payroll costs due to the additional accounting and scheduling burdens caused by the various Government breaches found by the Court in its Decision. As set forth in Tab F, hereto, North Star's claim for additional payroll costs totals $458,078.06.

**G. OUTSTANDING OVERHEAD AND MARGIN**

The Lease entitles North Star to reasonable overhead for manhour costs expended to repair damage to property above normal wear and tear, but the Government engaged in the practice to exclude overhead. The Court found on page 94 of its Decision that although this issue was raised by North Star in its September 4, 2002 letter, the Court lacked monetary jurisdiction over this claim for a failure to state a sum certain. As previously noted, however, on page 85 of the Decision, the Court found that North Star was entitled to a declaration regarding "the correctness of its interpretations of the Lease, and the requirements of the covenant of good faith and fair dealing, with respect to the enumerated items that increased downtime and otherwise increased North Star's costs." Accordingly, North Star is claiming the overhead and margin that was improperly withheld from it during the years 1998-2005. This claim totals $26,917.00, and is more fully detailed in Tab G, hereto.

**CONCLUSION**

In light of all of the above, North Star hereby demands payment from the Government of $1,887,822.04, with interest from the date of this submission. Your Final Decision is requested within sixty (60) days from the date received or North Star shall deem this claim denied.

Sincerely,

Rhonda Sekyra

Rhonda Sekyra
Secretary/Treasurer

Enclosures

**CERTIFICATION**

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Rhonda Sekyra
Secretary/Treasurer

***Summary of CDA Claims***

| Claim ID | Claim | Total Claim | |
|---|---|---|---|
| A | Rent Abatements | $ | 59,394.37 |
| B | Unpaid Occupant Damages | $ | 409,905.07 |
| C | Incentive Fees | | $338,056.45 |
| D | Depreciation | $ | 578,112.00 |
| E | Cost Book Approval | $ | 17,359.09 |
| F | Additional Payroll | $ | 458,078.06 |
| G | Outstanding Overhead and Margin from 1998-5/2000 | $ | 26,917.00 |
| **Total** | | **$** | **1,887,822.04** |

# Exhibit B

DEPARTMENT OF THE ARMY
U.S. ARMY ENGINEER DISTRICT, ALASKA
P.O. BOX 6898
ELMENDORF AFB, ALASKA 99506-0898

REPLY TO
ATTENTION OF:

CERTIFIED MAIL
OCT 25 2007

Office of Counsel

North Star Alaska Housing Corporation
ATTN: Ms. Rhonda Sekyra
937 Harvard Avenue East
Seattle, WA 98102-4532

Re: Contracts DACA85-1-86-71 (Outlease), DACA85-9-86-27 (Agreement to Lease) and DACA85-5-88-17 (Lease), Fort Wainwright, Alaska

Dear Ms. Sekyra:

Enclosed are my Findings of Fact and Contracting Officer's Decision (COD) regarding the claim for Rent Abatement (years 2002, 2003 and 2005), Matching Carpet Unit 884, Carpet and Vinyl Unit 883, Gutter Downspout Unit 638, Carpet and Counter Unit 961, Repainting Bathroom Unit 961, Water Damage Units 1006, 1229 and 952, and Floor Matching Unit 623 on Fort Wainwright, Alaska.

Originally I hoped to complete my assessment of the incentive fees claims in this decision. Unfortunately, more time is needed to complete a fair and impartial assessment of the claim. I will issue a COD on incentive claims on 30 November 2007.

If you have any questions about the enclosed COD, please contact Ms. Anne L. Burman of our Office of Counsel at (907) 753-2532.

Sincerely,

Veronica A. Hiriams
Chief, Real Estate Division
Contracting Officer

Enclosure

Copy Furnished:

CEPOA-RE (Official Contract File)

**FINDINGS OF FACT TO ACCOMPANY**
**CONTRACTING OFFICER'S DECISION**

**Rent Abatement (years 2002, 2003 & 2005)**
**Matching Carpet Unit 884**
**Carpet & Vinyl Unit 833**
**Gutter Downspout Unit 638**
**Carpet & Counter Unit 961**
**Repainting Bathroom Unit 961**
**Water Damage Units 1006, 1229 and 952**
**Floor Matching Unit 623**

**CONTRACT NUMBERS:** DACA85-1-86-71 (Outlease)
DACA85-9-86-27 (Agreement to Lease)
DACA85-5-88-17 (Lease)

**NAME AND ADDRESS OF CONTRACTOR:** North Star Alaska Housing Corporation
937 Harvard Avenue East
Seattle, WA 98102-4532

**CONTRACT DESCRIPTION:**

To design and construct 400 family housing units for military personnel and their families on Fort Wainwright, Alaska, pursuant to the Military Construction Authorization Act of 1984, 10 U.S.C. § 2828(g), as amended by the Military Construction Authorization Act of 1986, P.L. 99-167, Sec 801.

The outlease is a lease of government property on Fort Wainwright to the developer, beginning on June 27, 1986, for a period of 32 years, subject to termination clauses.

The Agreement to Lease provided for the Government to lease back the property, including the 400 housing units and related structures and improvements, upon completion of the project.

The Lease between North Star Alaska Housing Corporation (hereinafter North Star) and the Government is for a period of 19 years and six months, beginning November 6, 1987.

**CONTRACT AMOUNT:**

The contract amount is determined to be the combined annual total of the shelter rent and the maintenance rent costs of the 400 units over the life of the Lease. That amount excludes Work Authorization repairs and utility charges, which are paid separately by the Government. Adjustments are allowed for fluctuations in the costs of maintenance and real estate taxes.

**AMOUNT IN DISPUTE:** $ 59,394.37 - Rent Abatement
$ 1,674.00 - Matching Carpet Unit 884
$ 3,478.00 - Carpet & Vinyl Unit 833
$ 40.00 - Gutter Downspout Unit 638
$ 1,386.00 - Carpet and Counter Top Unit 961
$ 179.00 - Repainting Bathroom in Unit 961
$ 18,308.00 - Water Damage Units 1006, 1229 & 952
$ 1,183.00 - Floor Matching Unit 623
$85,642.37+ 40% additional overhead on $26,248.00 + Interest

**THE DISPUTE:**

North Star requests payment from the Government of $1,887,822.04 consisting of seven major claim areas (Parts A – G) as shown in their claim dated August 23, 2007. North Star also requests Contract Disputes Act (CDA) interest from the date of submission of the claim. The total sum claimed of $1,887,822.04 includes an additional 40% overhead requested for Part B and Parts D-F of the claim. This partial decision pertains only to the following parts of the claim:

**Part A, Rent Abatement** for which North Star alleges the Government improperly assessed liquidated damages during the period of 2002, 2003 and 2005.

**Part B-2, Matching Carpet Unit 884** for which North Star contends that replacing blue carpet with brown carpet is acceptable since the blue carpet was no longer available and past practice had allowed the use of brown carpet even though there were other colors of carpet elsewhere in the unit.

**Part B-3, Carpet & Vinyl Unit 833** for which North Star contends the replacements were due to occupant damages.

**Part B-4, Gutter Downspout Unit 638** for which North Star contends the replacement was due to occupant damage.

**Part B-5, Carpet & Counter Top Unit 961** for which North Star contends the occupants had damaged the carpet and counter tops to the extent they should be replaced.

**Part B-6, Repainting Bathroom Unit 961** for which North Star contends the bathroom had already been properly painted and did not require a repainting.

**Part B-12, Water Damage Units 1006, 1229 & 952** for which North Star contends that the occupant's conduct caused the water damage to Unit 1006, the Government's failure to regularly inspect the vacant unit led to escalation of the damages in Unit 1229, and that water damages to Unit 952 were a result of the Government's failure to inform North Star of a problem with the toilet in the upstairs master bathroom.

**Part B-13, Floor Matching Unit 623** for which North Star contends that the carpet replaced by the Government's contractor was not compatible in kind and color with the adjacent carpet.

**PERTINENT CORRESPONDENCE:**

1. Reserved.
2. Reserved.
3. Opinion of the United States Court of Federal Claims in North Star Alaska Housing Corporation v. The United States, Nos. 98-168C, 02-1632C and 03-2699C, filed April 2, 2007.
4. CDA Claim; Request for Contracting Officer's Final Decision (COD) dated August 23, 2007; Parts A, B-2 thru B-6, B-12, and B-13.
5. CDA Claim; Request for COD, dated August 23, 2007, Letter of Transmittal.
6. COD, dated September 23, 2005, Water Damaged Unit 1006.
7. COD, dated September 26, 2005, Water Damaged Unit 1229.

8. Request for COD, dated August 11, 2003; Gutter Downspout Unit 638 and letter response dated September 22, 2003.
9. COD, dated September 29, 2003, Re-painting of Bathroom Unit 961.
10. COD, dated August 11, 2003, Carpet and Counter Top Unit 961.
11. COD, dated December 16, 2002, Carpet & Vinyl Unit 833.
12. COD, dated October 23, 2002, Matching Carpet Unit 884.

**PERTINENT CONTRACT PROVISIONS:**

13. Lease Exhibit C, Sec. C. 1(s), Damages Caused by Occupants.
14. Lease Exhibit C, Sec. C. 1(w), Major Unforeseen, Unscheduled Work.
15. Lease Exhibit C, Sec. E. 8(c), Workmanship.
16. Lease Exhibit C, Sec. H.1(c) and H.1(d).

**FINDINGS OF FACT:**

**Rent Abatement** - North Star has requested reimbursement for actual amount of rent reductions of monthly rent withheld by the Government and not awarded in the Court's Opinion filed April 2, 2007 or claimed in the '04 and '05 cases. This request is for an amount of $59,394.37, plus interest for the periods as depicted in the Chart attached as Part A of the claim dated August 23, 2007.

Beginning in 2002, the Government invoked Sections H.1.(c) and H.1.(d) of the Maintenance Annex to the Lease, assessing liquidated damages against North Star for each calendar day in excess of the allowable change of occupancy downtime. As stated on page 64 of the Court's Opinion filed 2 April 2007, in the court's view, these assessments cannot stand. Also on page 85 of the Court's Opinion, North Star is entitled to recover the costs associated with rent abatements.

It appears that the first two rent abatements (August 2005 and July 2005 totaling $3,406.28), listed in the chart of Part A of the Request for COD, relate to liquidated damages taken by the Government for downtime due to flood repairs of Units 1006 and 1229. COD for flood damage repairs of Units 1006 and 1229 were sent to North Star on September 26, 2005. The remainder of the rent abatements listed in Part A of the COD request dated August 23, 2007 (totaling $55,988.09) were a direct result of what the Government considered to be excess change of occupancy downtime.

**Matching Carpet Unit 884** – North Star has requested reimbursement to replace carpet in Unit 884 for the sole purpose of matching kind and color of adjacent carpet. Costs claimed are $1,674.00 (including 10% overhead and 10% profit), plus an additional 40% overhead, plus CDA interest from date of submission of this claim. North Star originally requested reimbursement for this carpet replacement by COD request dated October 23, 2002. The COD dated November 20, 2002 found that North Star had the option of either replacing the damaged carpet with blue carpet that was compatible with the adjacent undamaged carpet, or replacing the undamaged carpet with the same brown carpet used to replace the damaged carpet. Page 69 of the Court's Opinion finds that the Army was responsible for the cost of replacing the carpeting in Unit 884.

**Carpet & Vinyl Unit 833** – North Star has requested reimbursement to replace damaged carpet and vinyl in Unit 833. Costs claimed are $3,478.00 (including 10% overhead and 10% profit), plus an additional 40% overhead, plus CDA interest from date of submission of this claim. North Star originally requested reimbursement for this flooring replacement by a COD request dated December 16, 2002. The COD dated February 14, 2003 found North Star to be financially responsible for the replacement of flooring due to cracks in the vinyl and failure of

previous repairs to the carpet as well as the age of the flooring. Page 70 of the Court's Opinion finds that the Army, and not North Star, should be responsible for the cost.

**Gutter Downspout Unit 638** – North Star has requested reimbursement to replace a damaged gutter down spout for Unit 638. Costs claimed are $40.00 (including 10% overhead and 10% profit), plus an additional 40% overhead, plus CDA interest from date of submission of this claim. North Star originally requested reimbursement for this replacement by a COD request dated August 11, 2003. By letter dated September 22, 2003, the Contracting Officer declined a decision stating this issue, among others, was pending before the Court of Federal Claims (COFC). Page 85 of the Court's Opinion reflects that North Star is entitled to declaratory relief regarding the gutter down spout in Unit 638.

**Carpet and Counter Top Unit 961** – North Star has requested reimbursement for damaged carpet and counter top in Unit 961. Costs claimed are $1,386.00 (including 10% profit and 10% overhead), plus an additional 40% overhead, plus CDA interest from date of submission of this claim. North Star originally requested reimbursement for this replacement by COD request dated August 11, 2003. By letters dated September 22, 2003 and October 21, 2003, the Contracting Officer declined a decision stating this issue was pending before the COFC. Page 91 of the Court's Opinion reflects that jurisdiction is lacking for monetary claims on this issue.

**Repaint Bathroom Unit 961** – North Star has requested reimbursement for the costs associated with repainting the bathrooms in Unit 961. Costs claimed are $179.00 (including 10% overhead and 10% profit), plus an additional 40% overhead, plus CDA interest from date of submission of this claim. North Star originally requested a COD with regards to financial responsibility for repainting the bathrooms by a COD request dated August 11, 2003. The

Contracting Officer rendered a decision on September 29, 2003, stating that North Star had the financial responsibility for repainting the bathrooms. Page 85 of the Court's Opinion reflects that North Star is entitled to declaratory relief regarding the repainting of bathrooms in Unit 961.

**Water Damage Units 1006, 1229 and 952** – North Star has requested reimbursement for costs associated with water damage repairs to these three units. Costs claimed for all three units total $18,308.00; (including 10% overhead and 10% profit), plus an additional 40% overhead, plus CDA interest from date of submission of this claim. A COD concerning Unit 1006 was signed on September 23, 2005 and mailed on September 26, 2005. The disputed amount totaled $16,473.92 ($1,922.90 rent reduction + $14,551.02 repair cost). The Contracting Officer (CO) found neither the Government nor the occupant at fault and denied the claim. A COD concerning Unit 1229 was signed and mailed on September 26, 2005. The disputed amount totaled $4,546.05 ($1,483.38 rent reduction + $3,062.67 repair cost). The CO found neither the Government nor the occupant at fault and denied the claim. The CDA which governs both of these claims required North Star to appeal these decisions either to the Armed Forces Board of Contract Appeals (ASBCA) within 90 days or to the COFC within 12 months. A COD concerning Unit 952 water damages was signed on March 19, 2004. The disputed amount was not specified in the request for COD. This COD was appealed to the COFC in the 2004 Case No. 04-1396C and is addressed in the Settlement Agreement signed September 26, 2007.

**Floor Matching Unit 623** – North Star has requested reimbursement for costs to replace carpet that was installed by the Government's contractor and which North Star believes did not match existing carpet in kind and color. Costs claimed for this unit total $1,183.00 (including 10% overhead and 10% profit) plus an additional 40% overhead, plus CDA interest from date of submission of this claim. A COD denying North Star's claim was issued on October 29, 2004.

The COD was appealed to the COFC in the 2005 Case No. 05-930C and is addressed in the Settlement Agreement signed September 26, 2007.

**CONCLUSION:**

**Rent Abatement** – In regards to the statements of the Court's Opinion, dated April 2, 2007, on page 64, "In the court's view, these assessments cannot stand," and page 85, "plaintiff is entitled to recover the costs associated with rent abatements (liquidated damages)," it is believed by the CO that these statements refer to the rent abatements collected by the Government as liquidated damages associated with what the Government believed to be excess down time for change of occupancy maintenance. Evidence shows that the first two line items listed in the Rent Abatement chart under Part A of this claim relate to liquidated damages taken by the Government for downtime due to flood repairs of Units 1006 and 1229. The COD dated September 23 and September 26, 2005 found neither the occupant nor the Government at fault for the flooding. The CDA which governs these two claims required North Star to appeal these decisions either to the ASBCA within 90 days or to the COFC within 12 months. The claims arising from Units 1006 and 1229 were not part of any of the complaints filed in the court. Thus, the time period to appeal these two has lapsed. I therefore have no authority to further rule on these two previous CODs. However, in accordance with the Court's Opinion dated April 2, 2007, I find that the remainder of the rent abatements listed in Part A of this request for COD were a direct result of what the Government considered to be excess change of occupancy downtime. I therefore find that North Star should be reimbursed $55,988.09, plus CDA interest from the date of receipt of this COD request (August 27, 2007).

**Matching Carpet Unit 884** – In accordance with page 69 of the Court's Opinion dated April 2, 2007, the Army was responsible for the cost of replacing the carpeting in Unit 884. I

could find no evidence of previous billings by North Star to the Army for this carpeting, however in comparison to carpet replacement billings for other similar Units, the amount of $1,674.00 appears reasonable. I therefore find that North Star should be reimbursed $1,674.00, plus CDA interest from the date of receipt of this COD request (August 27, 2007).

**Carpet & Vinyl Unit 833** – In accordance with page 70 of the Court's Opinion dated April 2, 2007, the Army should have been responsible for the cost when the carpet and vinyl were replaced. In accordance with the previous bills on file with the Army and the approved 2002 list of repair costs (price book), I find the claimed amount of $3,478.00 to be reasonable. I therefore find that North Star should be reimbursed $3,478.00, plus CDA interest from the date of receipt of this COD (August 27, 2007).

**Gutter Downspout Unit 638** - In accordance with page 85 of the Court's Opinion dated April 2, 2007, the plaintiff is entitled to declarations regarding the gutter down spout in Unit 638. I therefore find that North Star should be reimbursed $40.00, plus CDA interest from the date of receipt of this COD request (August 27, 2007).

**Carpet & Counter Unit 961** – In accordance with page 91 of the Court's Opinion dated April 2, 2007, jurisdiction is lacking for monetary claims. According to the previous billings on file with the Army, I find the claimed amount of $1,386.00 to be reasonable. The Army's unit files, however, show evidence that two amounts were previously authorized for payment when this bill was submitted by North Star in July 2003. The $196.20 was authorized for carpet and $74.54 was authorized for carpet installation on July 12, 2003. This previous payment of $270.74 should be deducted from the total amount of $1,386.00. I therefore find that North Star should be reimbursed $1,115.26, plus CDA interest from the date of receipt of this COD request (August 27, 2007).

**Repainting Bathroom Unit 961** – In accordance with page 85 of the Court's Opinion dated April 2, 2007, the plaintiff is entitled to declarations regarding the repainting of Unit 961. I therefore find that North Star should be reimbursed $179.00, plus CDA interest from the date of receipt of this COD request (August 27, 2007).

**Water Damage Units 1006, 1229 and 952** - In regards to water damage to Units 1006 and 1229, CODs were issued dated 23 September and 26 September 2005. The CDA which governs these claims required North Star to appeal these decisions either to the ASBCA within 90 days or to the COFC within 12 months. The claims arising from Units 1006 and 1229 were not part of any of the complaints previously filed in the court. The time period to appeal these two CODs has lapsed. The CO is without authority to make any further decisions in regards to water damage of Units 1006 and 1229. In regards to Unit 952, this is part of the 2004 Case No. 04-1396C and is addressed in the Settlement Agreement signed on September 26, 2007. No further action will be taken by the CO on Unit 952.

**Floor Matching Unit 623** – This issue is part of the 2005 Case No. 05-930C and is also addressed in the Settlement Agreement signed on September 26, 2007. No further action will be taken by the CO on Unit 623.

In regards to this partial COD, North Star is hereby awarded a sum total amount of $62,474.35 for the claims addressed in this COD. I further find that CDA interest should be paid on the principle amount of $62,474.35 from the date of receipt of this COD request (August 27, 2007) until paid. This decision in no way waives the United States' right to appeal the decision of the Court of Federal Claims in cases numbered 98-168C, 02-1632C and 03-2699 that determined entitlement to some of the claims decided in this document. My determination to pay North Star certain amounts in this document is predicated on the court's determination of

entitlement and is subject to a final judgment in those cases. Should any appeal of the court's decisions be successful for the United States, then the quantum determinations contained in this decision will be null and void. North Star's request for an additional 40% overhead will be addressed in a separate COD that will respond to the additional 40% overhead request for Parts B, D, E and F of North Star's COD request dated August 23, 2007.

This is the final decision of the Contracting Officer. This decision may be appealed to the Armed Services Board of Contract Appeals. If you decide to make such an appeal, you must mail or furnish written notice thereof to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, 7th Floor, Falls Church, Virginia 22041-3208, within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer, US Army Engineer District, Alaska, P.O Box 0898, Anchorage, Alaska 99506-0898, from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims within 12 months of the date you receive this decision.

The Small Claims Procedure of the Armed Services Board of Contract Appeals shall be applicable, at the sole discretion of the Contractor, in the event the amount of dispute, as a result of the final decision, is $50,000 or less; and the accelerated procedure of the Armed Services Board of Contract Appeals shall be applicable, at the sole discretion of the Contractor, in the event the amount in dispute, as a result of this decision is $100,000 or less.

Date: 25 Oct 07

Veronica Hiriams
Veronica Hiriams
Contracting Officer

# Exhibit C

**DEPARTMENT OF THE ARMY**
U.S. ARMY ENGINEER DISTRICT, ALASKA
P.O. BOX 6898
ELMENDORF AFB, ALASKA 99506-0898

REPLY TO ATTENTION OF:

October 19, 2007
Federal Express

Real Estate Division

Rhonda Sekyra
North Star Alaska Housing Corp.
937 Harvard Avenue East
Seattle, WA 98102-4532

Dear Ms Sekyra:

Reference your letter of response dated October 15, 2007 to my letter dated September 27, 2007 concerning North Star's Claim dated August 23, 2007. I can now give you a more definitive time line for decisions in regards to your claim as follows:

Parts A, Rent Abatement; B-2, Matching Carpet unit 884; B-3, Carpet & Vinyl unit 833; B-4 Gutter Downspout; B-5, Carpet and Counter Top unit 961; B-6, Repaint bathroom; and Part C, Incentive Fees. – COD response by October 25, 2007.

Part B-12, Water Damage units 1006, 1229 and 952 – CODs dated September 23, 2005 and September 26, 2005 were issued for water damages to units 1006 and 1229. The Contract Disputes Act which governs your claims required you to appeal these decisions either to the Armed Forces Board of Contract Appeals within 90 days or to the Court of Federal Claims within 12 months. The claims arising from units 1006 and 1229 were not part of any of the complaints filed in the court. Thus, the time period to appeal these two has lapsed. In regards to unit 952, this is part of the 2004 case (No. 04-1396C) and is addressed in the Settlement Agreement signed on September 26, 2007.

Part B-13, Floor Matching unit 623 – This is part of the 2005 case (No. 05-930C) and addressed in the Settlement Agreement signed on September 26, 2007.

The remainder of the claims are extensive and will require an audit of the files in order to substantiate. The Defense Contract Audit Agency (DCAA), a disinterested third party, has been requested to perform the audit and to provide information to the Contracting Officer. This is not a denial of your claims; just a delay in the Contracting Officer's final decision until enough facts and information is gathered to make a fair and equitable decision. DCAA has verbally notified this office that approximately 90 days will be required to complete the audit and provide findings to the CO. It is therefore anticipated that a Contracting Officer's Final Decision will be provided to North Star by February 27, 2008.

Sincerely,

Veronica A. Hiriams

Veronica A. Hiriams
Contracting Officer

Copies Furnished:

Tim McIlmail, Department of Justice
Anne Burman- CEPOA-OC
Anna Gordon- CEPSWG-OC